UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| BRUCE COLEMAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 14-204-DCR |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Bruce Coleman and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). [Record Nos. 15, 16] Coleman argues that the administrative law judge ("ALJ") assigned to his case erred in finding that Coleman is not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). He seeks reversal of the ALJ's decision and an award of benefits or remand. [Record No. 15-1] However, the Commissioner asserts that the ALJ's decision is supported by substantial evidence. [Record No. 16] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Coleman.

**I.**

On November 2, 2009, Coleman protectively applied for DIB and SSI, alleging that his disability began in January, 2009. [Record No. 15-1, Administrative Transcript, "Tr.," at pp. 158-162, 163-164] As a result of a tumultuous childhood that included witnessing his

-1-

father's death in a fire and his mother's subsequent suicide, Coleman claims to suffer from depression, post-traumatic stress disorder, and schizophrenia. He has reported hearing voices and feeling paranoid. [Tr., p. 298]

Following the denial of his applications, Coleman requested and received an administrative hearing before ALJ Roger L. Reynolds. [Tr., pp. 6-23] The ALJ found that Coleman was not disabled under the Act. [Tr., p. 18] After exhausting his remedies unsuccessfully with the Appeals Council, Coleman filed this action. In a decision issued by United States District Judge Amul R. Thapar, the Court reversed the ALJ's denial and remanded the claim for further evaluation of the claimant's medical opinion evidence. [Tr., pp. 42-430] On remand, the case was agan heard by ALJ Reynolds, who denied Coleman's claims on January 27, 2014. [Tr., pp. 368-386] In relevant part, the ALJ found that Coleman is not disabled under §§ 216(i) and 223(d) of the Social Security Act. [Tr., p. 380] Coleman did not file exceptions with the Appeals Council. Thus, the January 27, 2014 decision is the final agency action subject to judicial review.

Coleman was 38 years old at the time of the ALJ's decision and worked most recently as a school crossing guard. [Tr., p. 374] Coleman also indicated he had engaged in lay ministry in his church, preparing and delivering sermons, since his alleged onset date of disability. [*Id.*] He alleged a number of conditions that the ALJ found severe, including: borderline intellectual functioning, schizoaffective disorder versus major depressive disorder,post-traumatic stress disorder, alcohol dependence in remission by history, insulin dependent diabetes mellitus, obesity, and hypertension. The ALJ found that Coleman also suffered from obstructive sleep apnea, but the condition was not a severe impairment. [*Id.*]

As evidence of his disabilities, Coleman provided his own testimony and reports from a number of doctors, including, *inter alia*: practitioner Sheila Mullins, treating doctor Craig Enlow, state examining doctor Harwell Smith, state agency physician Edward Stodola, treating doctor Stuart Larson, and consultative examiner Jennifer Fishkoff.  Since Coleman's alleged onset date in January 2009, he has received treatment and medication for depression and auditory hallucinations, reporting that they are at a manageable whisper level and do not intrude on his daily life.  [Tr., p. 679]  The record suggests no change in his medications as of April 10, 2013, and a treatment note from November, 2013, recorded that all of Coleman's symptoms have been under control since the introduction of antipsychotics to his regimen. [Tr., p. 377]

After reviewing the record and considering the testimony presented during the administrative hearing, the ALJ concluded that Coleman had the residual functional capacity ("RFC") to perform medium-level work as defined in 20 CFR 404.1567(c) and 416.967(c), with the following modifications:

> Coleman requires entry level work with simple one-two step procedures; no frequent changes in work routines; no requirement for detailed or complex problem solving, independent planning, or the setting of goals; and no fast-paced assembly lines or rigid production quotas.

[Tr., p. 375]  Vocational Expert ("VE") Jackie B. Rogers testified that an individual with those RFC limitations should work in an object-oriented, non-public work environment with only occasional and casual contact with co-workers or supervisors and minimal contact with the general public.  Based on the finding that Coleman retained the ability to perform medium-level work and relying on VE Rogers's testimony, the ALJ concluded that jobs exist in significant numbers in the national economy that the claimant can perform, such as

cleaner,[1] landscape worker,[2] and packager.[3]  [Tr., p. 379]  As a result, the ALJ determined that Coleman was not disabled under the Act.  [Tr., p. 380]

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the Commissioner cannot make a determination of disability based on

---

[1]    DOT # 323.687-018

[2]    DOT # 406.687-010

[3]    DOT # 920.587.018

medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also

supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Coleman argues that the ALJ improperly rejected the opinions of Dr. Larson, Dr. Smith, and Dr. Fishkoff, relying instead on the opinions of non-examining, non-treating state agency psychologists. [Record No. 15-1, p. 5]

#### A.     Dr. Larson's Testimony

Dr. Stuart Larson treated Coleman for approximately eighteen months at Comprehensive Care, an outpatient mental health facility. [Record No. 15-1, p. 5] Coleman argues that the ALJ failed to give Dr. Larson's treatment notes the proper weight. Further, Coleman claims that the ALJ did not consider "that Dr. Larson had a long treatment history with Mr. Coleman and that Dr. Larson's opinion was based on his observation of Mr. Coleman over that period of time." [*Id.* at p. 12]

When a treating physician submits a medical opinion, the reviewing ALJ must either defer to the opinion or provide good reason for rejecting it. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); *see also Walters v. Comm'r Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997) (ALJ may discount a doctor's opinion when the doctor's findings are not supported by objective medical evidence or are inconsistent with the record as a whole).

In the case at hand, ALJ Reynolds considered the entire record before reaching his determination. [Tr., 371] He specifically reviewed Dr. Larson's treatment notes in his

written decision, setting forth his reasons for accepting and rejecting the various medical conclusions. The ALJ observed that Dr. Larson's notes reflected overall improvement in Coleman's health and presented "no evidence that the claimant is totally unable to interact with supervisors other than his own self-serving statements." [Tr., p. 377] The ALJ found that Dr. Larson's opinion was inconsistent with the treatment record, which showed that Coleman's condition was stable and successfully controlled with medication. [Tr., pp. 377, 362-64] In light of Dr. Larson's indication that his medical opinion was based on Coleman's self-reports of significant stress in dealing with others, the ALJ found that the opinion was less reliable. [Tr., p. 366] *See McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where claimant's subjective complaints were unsupported by objective findings). Further, the ALJ found that Dr. Larson's reports of "poor abilities to deal with the general public" were "contrary to the claimant's admitted work in his church." [Tr., p. 377] The reports were also inconsistent with objective medical findings that Coleman lacked any overt psychotic symptoms, abnormal movements, suicidal or homicidal thoughts, or anxiety. [Tr., pp. 330, 358, 362, 364, 590-609]

Where the limitations specified by Dr. Larson were consistent with the evidence of record, the ALJ afforded his opinion some weight. ALJ Reynolds relied on Dr. Larson's indications that the claimant "has a fair (seriously limited, but not precluded) ability to relate to co-workers, behave in an emotionally stable manner and relate predictably in social situations." However, "little weight" was given to Dr. Larson's "ultimate conclusion that the claimant was completely disabled," because it was inconsistent with his own treatment records and the claimant's ability to work as a crossing guard. [Tr., p. 378]

### B. Dr. Smith's Testimony

On January 6, 2010, Dr. Harwell Smith performed a psychologist consultative evaluation of Coleman at the request of the state agency. [Record No. 16, p. 2] Dr. Smith concluded that Coleman functioned in the borderline intellectual range, indicating more than serious symptoms with impairment in realty testing or communication. Dr. Smith also found that Coleman had a good ability to perform daily living activities and a fair ability to understand and remember two-step instructions, but had a poor ability to tolerate stress, interact socially, show concentration and persistence on tasks, and to adapt to the pressures of day-to-day work stress. [Tr., pp. 364-65]

However, ALJ Reynolds considered and rejected Dr. Smith's conclusions in light of the fact that he was a "one-time consultative psychological examiner" and the findings were contrary to the bulk of the record. [Tr., p. 378] Because Coleman was working part time and "his treating psychologist stated that he is doing well, with his hallucinations being at a minimum," the ALJ found that Dr. Smith's inconsistent conclusions were not entitled to any weight. [*Id.*]

### C. Dr. Fishkoff's Testimony

After the ALJ's first decision was remanded, Coleman underwent a psychological consultative evaluation with Dr. Jennifer Fishkoff. [Tr., pp. 719-726] Dr. Fishkoff diagnosed Coleman with chronic, undifferentiated schizophrenia, depression, and post-traumatic stress disorder. Her results indicated serious psychological symptoms, and she noted that his prognosis was guarded. Further, Dr. Fishkoff found that Coleman was unable to tolerate the stress and pressure of work activity or maintain employment. [Tr., pp. 725]

In reviewing Dr. Fishkoff's consultative examination of the claimant, ALJ Reynolds noted:

> [Dr. Fishkoff] made internally inconsistent statements, first stating in the body of the report that the claimant was impaired/had a poor ability to work, then indicating in a medical source statement form that his only marked limitation was in his ability to deal with complex instructions, and that he had only a moderate (more than a slight limitation but still able to function satisfactorily) limitation in his ability to deal with simple instructions, interact appropriately with the public, interact appropriately with supervisors and co-workers, and respond appropriately to work situations and to changes in a work setting.

[Tr., p. 378] Of Dr. Fishkoff's conflicting opinions, the ALJ found that those "contained in the medical source statement form" were more accurate and entitled to greater weight. The ALJ used this form in determining Coleman's RFC, even affording the claimant the benefit of the doubt regarding the more severe limitations in his ability to work with others. [*Id.*]

### D.     State Agency Doctors

Finally, Coleman argues that the ALJ gave too much weight to the opinions of non-examining, non-treating state agency doctors. State agency physician Dr. Edward Stodola concluded that Coleman suffered from severe organic mental disorders, affective disorders, and substance addiction disorders and was moderately limited in several areas of functioning. [Tr., pp. 304-14] He further concluded that the claimant could understand, remember, and carry out simple instructions, relate adequately in task-oriented, non-public settings, and adapt to changes and pressures of a routine setting. [Tr., pp. 319-20] Dr. Ann Hess, a state agency psychologist, affirmed these conclusions. [Tr., p. 340]

Under 20 C.F.R. § 404.1527(c)(1), an examining source will generally receive more weight than the opinion of a source who has not examined a claimant. The weight given to a medical opinion depends on a variety of other factors, including whether a source actually

treated a claimant, the supportability of the source's opinion, the consistency of the opinion when compared with the record as a whole, and other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

It was proper for the ALJ to rely on the opinions of the state consulting examiners. *McGre v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *see* 20 C.F.R. § 404.1527(e). ALJ Reynolds appropriately applied the factors to be considered under § 404.1527 and § 416.927. The state agency examiners' findings were consistent with the bulk of the record. Where the state examiners' opinions conflicted with the claimant's treating physician, the ALJ expressly found Coleman more restricted than the state agency psychologists concluded. In doing so, the ALJ considered the effect of medical records subsequent to the state agency assessments. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). Moreover, district courts generally defer to an ALJ's decision to give more weight to the opinion of one physician than another where, as here, the ALJ's decision is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record. *Cox v. Comm'r of Soc. Sec.*, 295 F. App's 27, 35 (6th Cir. 2008).

Coleman's own reports support the ALJ's decision. The claimant confirmed that he was capable of helping his wife with their baby and doing a little cleaning around the house. [Tr., p. 193] Additionally, he visited friends once or twice a week and went to church. [Tr., 300] He indicated that he shopped for groceries, was able to pay bills, and could handle a savings account. His daily activities included biking, running errands, and writing. [Tr., p. 196] On school days, he worked as a crossing guard. [Tr., 394] Such activities are appropriately considered when inconsistent with claims of disabling limitations. *See Jones v.*

*Comm'r of Soc. Sec.*, 1995 U.S. App. LEXIS 35489 (6th Cir. Nov. 8, 1995) (unpublished) (ALJ may justifiably consider the claimaint's demonstrated ability to conduct daily life activities in light of claims of disabling pain).

In summary, there is sufficient evidence in the record to support the conclusion that, although Coleman suffers from severe conditions, his symptoms are well controlled and he is able to maintain an active lifestyle inconsistent with claims of disability. Both the weight given by the ALJ to the testimony of the sundry medical examiners and his ultimate disposition are supported by substantial evidence. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 725 (6th Cir. 2004) ("Substantial evidence is a fairly low bar: more than a mere scintilla, yet enough that a reasonable mind might accept as adequate to support a conclusion.").

### IV.

Based upon the above analysis of the record, it is hereby

**ORDERED** as follows:

1. Plaintiff Bruce Coleman's Motion for Summary Judgment [Record No. 15] is **DENIED**.

2. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 16] is **GRANTED.**

3. The administrative decision of Administrative Law Judge Roger L. Reynolds will be **AFFIRMED** by separate Judgment entered this date.

This 9th day of February, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge